IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

WILHY HARPO, f/k/a )
Willie Wesley Brown, )
 )
    Plaintiff, )
 )
v. ) CV 112-039
 )
RONALD STRENGTH, et al., )
 )
    Defendants. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff filed the above-captioned case *pro se*, attempting to assert a claim under 42 U.S.C. §§ 1981, 1982, and 1983. As Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i) & (ii).

At the outset, the Court notes that Plaintiff previously brought a similar suit concerning the same events that are alleged in this case. See Harpo v. Strength, CV 111-189 (S.D. Ga. Nov. 21, 2011). CV 111-189 was dismissed without prejudice by the Honorable J. Randal Hall, United States District Judge, for Plaintiff's failure to notify the Court of a change of address, pursuant to a recommendation by this Court. Id., doc. nos. 10, 12. Plaintiff then filed untimely objections to the Court's recommendation, which Judge Hall overruled because Plaintiff had

subsequently mailed a notice of voluntary dismissal. Id., doc. no. 17.

In addition, Plaintiff filed a separate lawsuit under his former name, Willie Wesley Brown,[1] raising one of the claims alleged in the instant case. See Brown v. Sheriff of Richmond County, CV 109-144, doc. no. 1 (S.D. Ga. Nov. 20, 2009). Following screening of Plaintiff's amended complaint in CV 109-144, the Court allowed Plaintiff to proceed against defendant Elaine C. Johnson based on his allegations that she had denied him access to the courts by, *inter alia*, engaging in deceptive and dishonest practices when processing Plaintiff's state court case filings in an effort to cause him legal harm. See id., doc. no. 11. However, on a second motion to dismiss filed by the defendant, Judge Hall dismissed CV 109-144 with prejudice based on Plaintiff's repeated disregard of court orders to confer with the defendant as required under Fed. R. Civ. P. 26(f), participate in discovery, and appear for properly noticed depositions, among other things. Id., doc. no. 89.

## II. SCREENING OF THE COMPLAINT

In the instant complaint, Plaintiff names the following individuals as Defendants: (1) Ronald Strength, Sheriff of Richmond County, Georgia; (2) Charles A. Toole, Sr., Chief Jailor at the Richmond County Sheriff's Department; (3) William E. Johnson, an assistant chief jailor at the Richmond County Sheriff's Department; (4) Chester V. Huffman, another assistant chief jailor at the Richmond County Sheriff's Department; (5) Rachel Hardin, a deputy sheriff of the Richmond County Police Department; (6 & 7) John Doe sheriff deputies #1-2, who are also identified as police officers of the Richmond County Police Department; (8) Caroline Lee,

---

[1] Notably, Plaintiff attached several exhibits to the instant complaint which include his signature under his former name. (See doc. no. 1, Exs. A, C, E, F, G, J, L, M.) Further, in CV 111-189, Plaintiff acknowledged that he is formerly known as Willie Wesley Brown. CV 111-189, doc. no. 1, p. 2.

who Plaintiff identifies as the head nurse at the Richmond County Sheriff's Department; (9) Correctional Medical Services, Inc.; (10) Elaine C. Johnson, Clerk of the Richmond County Superior Court; (11) Eloise Porter, a deputy clerk of the Richmond County Superior Court; (12) Luann Staulcup, a deputy chief clerk of the Richmond County State Court; (13) Jane Doe deputy clerks of the Richmond County State Court; (14) Jane Doe deputy clerks of the Richmond County Magistrate Court; (15) the Honorable H. Scott Allen, Judge of the Richmond County Magistrate Court; (16) the Honorable Richard A. Slaby, Judge of the Richmond County State Court; (17) Harold V. Jones, Solicitor General of the Richmond County State Court; and (18) Kelli Kenner, an assistant solicitor of the Richmond County State Court. (Doc. no. 1, pp. 2-6.)

According to Plaintiff, who asserts that he is African-American, Defendant Hardin and the two John Doe sheriff deputies illegally searched Plaintiff's person and the apartment of Plaintiff's acquaintance on February 21, 2008. (Id. at 2, 8.) Plaintiff alleges that Defendant Hardin improperly placed her hands on his genitalia while conducting her search of Plaintiff; when he protested, Defendant Hardin allegedly "became more aggressive," verbally abusive, and indicated that Plaintiff would be "beaten up" if he resisted. (Id.) Plaintiff further asserts that although he was cooperative and nonaggressive throughout the search at issue, one of the John Doe sheriff deputies twisted Plaintiff's arm behind his back "in an extremely painful[,] unnatural position," and slammed Plaintiff into a wall. (Id. at 9.) After the officers searched Plaintiff and the apartment, Plaintiff alleges that they escorted him to a police car, where he saw his photograph and police record on a computer display in the vehicle; Plaintiff asserts that this indicates that Defendant Hardin had conducted an investigation on him prior to his arrest. (Id. at 10.) Plaintiff asserts that he was then jailed in the Richmond County Jail based on charges

of disorderly conduct. (Id. at 10-11.)

Plaintiff asserts that he was incarcerated at the Richmond County Jail from February 21, 2008 through February 28, 2008. (Id. at 11.) Throughout this period, he alleges that he made numerous requests for medical care (he does not say for what purpose), as well as materials to conduct legal work; however, Plaintiff asserts that Defendants William Johnson, Toole, Strength, Lee, and Correctional Medical Services ignored or denied these requests. (Id.) Plaintiff further asserts that he was not provided with a copy of the charges against him until he was released on February 28, 2008. (Id.)

Plaintiff next alleges that on March 27, 2008, he appeared before Judge Allen for arraignment on the disorderly conduct charge. (Id. at 11, 18.) Plaintiff asserts that when he requested to plead "not guilty" to the charge, Judge Allen "advise[d] and insist[ed]" that Plaintiff take a plea of *nolo contendere*. (Id. at 18.) Plaintiff alleges that when he refused to do so, Judge Allen held him in contempt without "proper evidentiary cause," revoked his bond, and reset Plaintiff's bond at "an exorbitant cash sum." (Id. at 18-19.) Because Plaintiff evidently could not make the new bond, this resulted in his re-incarceration. (Id.) Plaintiff asserts that Judge Allen took these actions in retaliation for Plaintiff's decision to exercise his right to trial, and as "retribution" for other unspecified actions Plaintiff took in several "other cases involving Plaintiff in Richmond County." (Id. at 19-20.)

According to Plaintiff, from March 27, 2008 until August 1, 2008, he remained incarcerated at the Richmond County Jail and the Webster Detention Center, which Plaintiff asserts are under the control of Defendants William Johnson, Toole, Huffman, and Strength. (Id. at 11-12.) Throughout this period, Plaintiff asserts that he requested legal materials to pursue a mandamus case naming Defendant Strength as a defendant, as well as a habeas corpus

4

case alleging various acts of malfeasance by Defendants William Johnson, Strength, Toole, Huffman, and others. (Id. at 12-14.) Plaintiff asserts that these Defendants conspired to deny Plaintiff access to the courts and thus "deliberately failed" to provide him with the legal materials he needed to purse these cases, causing his cases to be dismissed. (Id. at 12.)

Plaintiff further alleges that he needs contact lenses in order to see well enough to conduct legal work; however, although he notified Defendant Lee and others that he needed proper storage for his contact lenses during his incarceration, Defendant Lee failed to provide such storage and failed to provide him with new contact lenses or glasses. (Id. at 14-15.) As a result, Plaintiff alleges that his contact lenses were "destroyed" and he suffered several eye infections that damaged his vision such that he could not see to conduct legal work. (Id. at 15-16.) Plaintiff further asserts that Defendants William Johnson, Strength, Toole, Huffman, and Lee conspired to deny him visual care in order to retaliate against him for the cases Plaintiff had filed against them. (Id. at 16.) Plaintiff further asserts that an unknown jail doctor later gave him a prescription for glasses or contact lenses, as well as a prescription to treat an eye infection; however, Plaintiff alleges that Defendant Lee falsified his medical records to reflect that he had refused this medical assistance. (Id. at 17.) Plaintiff also alleges that while he was incarcerated, he was forced to sleep on the ground and lived in crowded conditions where disease was "rampant," that he was denied unspecified "professional assistance," and was denied a secure mail system or access to a secure phone line. (Id. at 33.)

In addition, Plaintiff asserts that between April 4, 2008 and November 18, 2009, Defendants Elaine Johnson, Staulcup, Porter, and the Jane Doe deputy clerks of the Richmond County State and Magistrate Courts deliberately and improperly delayed, mishandled, and rejected his legal filings; Plaintiff alleges that these actions were taken pursuant to a conspiracy

with the remaining Defendants to keep Plaintiff unlawfully incarcerated, deny him access to court, and inflict emotional distress and physical pain on him. (Id. at 20-25.) Plaintiff asserts that he did not learn of some of this alleged misconduct until November 18 or 19, 2009 because Defendant Porter conspired with the other Defendants to conceal this conduct from Plaintiff's knowledge. (See id. at 24.)

Plaintiff further asserts that Defendants Jones and Kenner conspired with the other Defendants to deny him his right to due process and unlawfully prolong his incarceration by delaying the filing and transfer of his case – although it is unclear from the complaint which case Plaintiff is referring to – from the Richmond County Magistrate Court to the Richmond County State Court. (Id. at 26-27.) Plaintiff asserts that Defendants Jones and Kenner improperly ignored his requests for a jury trial and instead pursued a bench trial on June 17, 2008. (Id. at 28.) According to Plaintiff, in July of 2008, Defendants Jones and Kenner also engaged in improper *ex parte* communications with Judge Slaby, who was presiding over Plaintiff's proceedings in that case in the Richmond County State Court. (Id. at 28-29.) Plaintiff asserts that based on these improper communications, Judge Slaby "dead docketed" Plaintiff's case rather than properly dismissing it; Plaintiff further asserts that Judge Slaby ignored his pleadings and would only act on filings by the State. (Id. at 29-32.) Plaintiff alleges that Defendants Jones, Kenner, and Judge Slaby took these actions as "political retribution" against Plaintiff and in furtherance of the conspiracy with the remaining Defendants. (Id. at 30-31.)

## II. DISCUSSION

### A. Failure to State a Claim Under 42 U.S.C. §§ 1981 or 1982

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of

all inferences to be derived from the facts alleged, the Court finds that the complaint fails to state a claim under 42 U.S.C. §§ 1981 and 1982.

"To state a claim for non-employment discrimination under § 1981, a plaintiff must allege (1) he is a member of a racial minority, (2) the defendant intended to racially discriminate against him, and (3) the discrimination concerned one or more of the activities enumerated in the statute."[2] Jiminez v. Wellstar Health Sys., 596 F.3d 1304, 1308 (11th Cir. 2010) (citing Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1235 (11th Cir. 2000)). Section 1982 is "similar to § 1981 except that it focuse[s], not upon rights to make and to enforce contracts,

---

[2]Section 1981 provides, in its entirety:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.

but rights related to the ownership of property."[3] CBOS W., Inc. v. Humphries, 553 U.S. 442, 446-47 (2008). To state a claim for discrimination under § 1982, a plaintiff must allege facts to show: "(1) that he is a member of a protected class; (2) that Defendants intentionally discriminated against him on the basis of race; and (3) that there has been resulting interference in his rights or benefits connected with the ownership of his property." Todd v. Alabama Power, No. 09-0746, 2010 WL 749334, at *3 (S.D. Ala. Mar. 1, 2010) (citing CBOS W., Inc., 553 U.S. at 446-47).

Here, it is apparent that, as an African-American man, Plaintiff is a member of a protected class. Moreover, he has alleged that his right to sue and enjoy the full benefit of all proceedings have been impaired, which are rights recognized under § 1981. See Jiminez, 596 F.3d at 1308. However, Plaintiff's pleadings are completely devoid of any allegations suggesting that any Defendant intended to discriminate against him on the basis of his race. Thus, he fails to satisfy the second element under either section. In addition, nowhere does Plaintiff assert that his property rights have been infringed, and thus he has also failed to satisfy the third element necessary to state a claim under § 1982. In short, Plaintiff fails to state a claim for racial discrimination under either § 1981 or § 1982.

### B. Plaintiff's Claims are Barred by the Statute of Limitations

As noted above, all of Plaintiff's allegations concern events that occurred prior to

---

[3]Section 1982 provides, in its entirety:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

42 U.S.C. § 1982.

November 19, 2009. Unfortunately for Plaintiff, however, all of his claims, including his claims for denial of access to courts, deliberate indifference to serious medical needs, unlawful search and seizure, excessive force, and conspiracy, are subject to dismissal under the statute of limitations applicable in Georgia. State law controls the length of the statute of limitations period in § 1983 actions. Lawson v. Glover, 957 F.2d 801, 803 (11th Cir. 1987). In Georgia, such claims must be brought within two years of their accrual. Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001); Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986). Although state law determines the applicable statute of limitations period for claims under § 1983, federal law determines the date of accrual. See Brown v. Ga. Bd. of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir. 2003); Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996). Under § 1983, a claim accrues when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Brown, 335 F.3d at 1261 (quoting Rozar, 85 F.3d at 561-62).

Here, Plaintiff knew or should have known of the injuries alleged in his complaint, as well as who injured him, when the injuries occurred in 2008 and 2009. Indeed, as discussed further below, this is Plaintiff's third attempt to bring at least one of his claims, demonstrating that he has long known of the events of which he complains. Notably, even the most recent of the conduct alleged – that arising in November of 2009 – occurred over two years and four months before he filed the instant complaint, and the claims are thus well outside the two-year statute of limitations period. Therefore, all of Plaintiff's claims are subject to dismissal as time barred.[4]

---

[4]Notably, CV 111-189, filed on November 21, 2011, does not serve to toll the statute of limitations because service was never perfected on Defendants in that case. See Geary v. City

9

C.  **Immunity**

Even if Plaintiff's claims were not barred by the statute of limitations, Plaintiff's allegations against Judge Allen and Judge Slaby fail to state a claim because, as judges, they are entitled to absolute immunity. It is well-settled that judicial officers are entitled to absolute immunity for "actions taken . . . within the legitimate scope of judicial authority." Rehberg v. Paulk, ___ U.S. ___, 132 S. Ct. 1497, 1503 (2012); Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) (stating that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction'" (footnote omitted)). Thus, the Court must determine whether Judge Allen or Judge Slaby were dealing with Plaintiff in a judicial capacity and whether the conduct alleged clearly fell outside of their subject matter jurisdiction. See id. at 359-64.

As Plaintiff makes no allegation that Judge Allen or Judge Slaby acted in the "clear absence of all jurisdiction," id. at 357, the Court must consider whether their actions were of the type normally performed by judges. Patterson v. Aiken, 628 F. Supp. 1068, 1072 (N.D. Ga. 1985), aff'd, 784 F.2d 403 (11th Cir. 1986) (Table). Here, as Plaintiff's allegations as to Judge Allen and Judge Slaby concern their actions as judges presiding over Plaintiff's proceedings

---

of Snellville, 205 F. App'x 761, 762-63 (per curiam) (explaining that a prior, identical suit does not serve to toll the two-year statute of limitations in a § 1983 case where prior suit was dismissed without prejudice prior to perfecting service). Moreover, CV 109-144, filed on November 20, 2009, likewise does not support equitable tolling here because it was dismissed for Plaintiff's failure to cooperate in discovery and comply with the Court's Orders. See Justice v. United States, 6 F.3d 1474, 1480 (11th Cir. 1993) (affirming dismissal of a second suit as untimely where plaintiff's original action was dismissed for failure to timely comply with court orders, stating, "One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." (citing Baldwin County Welcome Center v. Brown, 466 U.S. 147, 151-52 (1984))).

in state court, such actions qualify as activity of a type usually performed by judges. Therefore, Judge Allen and Judge Slaby are entitled to absolute immunity, and Plaintiff's allegations against them fail to state a claim upon which relief may be granted.

Plaintiff also fails to state a claim against Defendants Jones and Kenner, as they too are entitled to immunity. Prosecutors are entitled to absolute immunity for damages under § 1983 for "actions taken . . . in their role as advocates." Rehberg, 132 S. Ct. at 1503; Rivera v. Leal, 359 F.3d 1350, 1353 (11th Cir. 2004) ("A prosecutor is entitled to absolute immunity for all actions he takes while performing his function as an advocate for the government."). "The prosecutorial function includes initiation and pursuit of criminal prosecution, and most appearances before the court . . . ." Rivera, 359 F.3d at 1353 (citation omitted); see also Rehberg v. Paulk, 611 F.3d 828, 837 (11th Cir. 2010) ("In § 1983 actions, prosecutors have absolute immunity for all activities that are 'intimately associated with the judicial phase of the criminal process.'" (quoting Van de Kamp v. Goldstein, 555 U.S. 335, 341 (2009))), aff'd, 132 S. Ct. at 1510.

Here, Plaintiff's allegations against Defendants Jones and Kenner only pertain to their traditional duties as counsel for the State in Plaintiff's criminal case, and they are therefore entitled to absolute immunity. Accordingly, Plaintiff's allegations against Defendants Jones and Kenner fail to state a claim upon which relief may be granted.

D. **Denial of Access to Court Claim Against Defendant Elaine Johnson is Barred by *Res Judicata***

Next, even if Plaintiff's claim that Defendant Elaine Johnson denied him access to court had been timely filed, this claim is barred under the doctrine of *res judicata*. According to the Eleventh Circuit, "[u]nder res judicata, also known as claim preclusion, a final judgment on the

merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action." In re: Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001), *cert. denied sub nom.* TDY Indus., Inc. v. Kaiser Aerospace & Elecs. Corp., 534 U.S. 827 (2001). In this Circuit, the doctrine of *res judicata* [also referred to as "claim preclusion"] can only be invoked if four requirements are met:

1. The prior decision must have been rendered by a court of competent jurisdiction;
2. There must have been a final judgment on the merits;
3. Both cases must involve the same parties or their privies; and
4. Both cases must involve the same causes of action.

Id. If these criteria are met, the Court "next determines whether the claim in the new suit was or could have been raised in the prior action; if the answer is yes, res judicata applies." Id.

In making a determination of whether a final judgment is "on the merits," the Court of Appeals has instructed that "dismissal of a complaint with prejudice satisfies the requirement that there be a final judgment on the merits." Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1501 (11th Cir. 1990). The Eleventh Circuit concluded that "[t]he phrases 'with prejudice' and 'on the merits' are synonymous terms, both of which invoke the doctrine of claim preclusion." Id.; see also Hart v. Yamaha-Parts Distribs., Inc., 787 F.2d 1468, 1470 (11th Cir. 1986) ("A dismissal with prejudice operates as a judgment on the merits unless the court specifies otherwise." (citing Fed. R. Civ. P. 41(b))).

To determine whether claims constitute the same cause of action for *res judicata* purposes, a court must examine the factual allegations of each claim. Israel Discount Bank Ltd. v. Entin, 951 F.2d 311, 315 (11th Cir. 1992). Claims amount to the same cause of action if the claims are based on the "same nucleus of operative fact," Citibank, 904 F.2d at 1503, or arose from the "same transaction or series of transactions." In re Justice Oaks II, Ltd., 898 F.2d 1544,

1551 (11th Cir. 1990). The substance of the allegations, rather than the form or label of the cause of action, determines whether the claims arose from the same cause of action. <u>I.A. Durbin, Inc. v. Jefferson Nat'l Bank</u>, 793 F.2d 1541, 1549 (11th Cir. 1986).

Addressing each of the elements of the doctrine of claim preclusion, this Court **FINDS** that Plaintiff's claim of denial of access to courts against Defendant Elaine Johnson in the instant case is barred. As noted above, Plaintiff's prior case, CV 109-144, alleged that Elaine C. Johnson, the Clerk of the Superior Court of Richmond County, denied Plaintiff access to court by, among other things, intentionally and improperly processing Plaintiff's legal filings. CV 109-144, doc. no. 8. In the instant suit, Plaintiff alleges that Defendant Elaine Johnson, as well as numerous other individuals, denied him access to court by intentionally mishandling his legal filings. (Doc. no. 1, pp. 20-22, 25.) This Court unquestionably had jurisdiction over Plaintiff's complaint filed in CV 109-144. The suit was brought pursuant to a federal statute, 42 U.S.C. § 1983, and Defendant Elaine Johnson was at that time (and is) the Clerk of the Superior Court of Richmond County -- the county in which this federal court sits. Furthermore, the Court's dismissal with prejudice[5] is a "final judgment on the merits" according to the Eleventh Circuit's opinion in <u>Citibank, N.A. v. Data Lease Financial Corp.</u> In addition, both Plaintiff and Defendant Elaine Johnson were parties to CV 109-144. Finally, both the prior civil action and the instant case involve Defendant Elaine Johnson's alleged denial of Plaintiff's access to court.

There is no doubt that all four prerequisites to the invocation of the doctrine of claim

---

[5] As stated within the text of this Order, the Court specifically declared on March 8, 2011 that "Plaintiff's case is <u>DISMISSED WITH PREJUDICE</u> . . . and <u>a judgment shall be ENTERED in favor of Defendant</u>." <u>Brown</u>, CV 109-144, doc. no. 89 (emphasis added).

preclusion have been satisfied, and that Plaintiff previously brought his present claim of denial of access to court in this Court and had it dismissed with prejudice. Thus, Plaintiff's claim of denial of access to courts claim against Defendant Elaine Johnson is barred by *res judicata*.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** for failure to state a claim upon which relief may be granted and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 4th day of May, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE